IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

|  |  |  |
|---|---|---|
| **CHARLES LEMUEL ARBOGAST, JR.,** *et al.*, | * | |
| Plaintiffs | * | |
| v. | * | CIVIL NO. JKB-14-4049 |
| **A.W. CHESTERTON CO.** *et al.*, | * | |
| Defendants | * | |

\* \* \* \* \* \* \* \* \* \* \* \*

## MEMORANDUM

Pending before the Court are two motions by Defendant CBS Corporation of Delaware ("Westinghouse"): one, a motion *in limine* to exclude the report, opinions, and testimony of Plaintiffs' expert as to asbestos exposure, R. Leonard Vance, Ph.D., J.D. PE, CIH (ECF No. 393), and, two, a motion for summary judgment as to all of Plaintiffs' claims against it (ECF No. 442). The motions have been briefed (ECF Nos. 415, 423, 493, 511), and no hearing is necessary, Local Rule 105.6 (D. Md. 2014). The motions will be granted.

### *I. Background*

As earlier noted in other opinions in this case, Plaintiffs Charles Lemuel Arbogast, Jr. ("Arbogast"), and Barbara Arbogast, sued a number of companies that allegedly manufactured and/or distributed products containing asbestos to which Arbogast was exposed, thereby causing his mesothelioma. Because the complaint is worded generically to apply to all Defendants and their various products, the merit of Plaintiffs' claims depends upon the evidence against specific Defendants and their respective, specific products. Plaintiffs have offered Dr. Vance as an expert in matters involving industrial hygiene and asbestos exposures. Dr. Vance's written

opinion as to Westinghouse focused on two products: asbestos "socks" and Micarta. (Vance Op. 10, Def. Westinghouse Mot. Lim. Ex. A, ECF No. 393-3.) Plaintiffs now concede that Westinghouse has no liability for the asbestos "socks" (Pls.' Opp'n 2, ECF No. 415); consequently, the admissibility of Dr. Vance's opinion will be considered only as to Micarta.

## II. Analysis

### A. Motion in Limine

Preliminarily, the Court excludes the "supplemental opinion" of Dr. Vance attached to Plaintiffs' response in opposition to Westinghouse's motion *in limine* (*id.* Ex. 9, ECF No. 415-10). Plaintiffs did not seek leave of court to make a supplemental disclosure so long after the deadline for doing so expired under the scheduling order (ECF No. 89), and they have offered no good cause to modify the scheduling order *nunc pro tunc*. *See* Fed. R. Civ. P. 16(b)(4) ("A schedule may be modified only for good cause and with the judge's consent."). Hence, Dr. Vance's opinion as to asbestos exposure emanating from Micarta will be analyzed only in relation to his original, timely disclosure.

Westinghouse argues that Dr. Vance's opinion as to Micarta "is grounded in neither sufficient facts nor data, is not the product of reliable principles and methods, and contains nothing that would assist the trier of fact." (Def. Westinghouse Mot. Lim. 1.) Having reviewed the record and the governing authorities, the Court concludes Westinghouse's argument is meritorious.

Federal Rule of Evidence 702 provides,

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
> (b) the testimony is based on sufficient facts or data;
> (c) the testimony is the product of reliable principles and methods; and

        (d)  the expert has reliably applied the principles and methods to the facts of the case.

Dr. Vance's opinion as to Micarta suffers from the same lack of factual underpinning as did his opinion with regard to General Electric Company's electrical wire.  (*See* Mem. Op. 9, May 18, 2016, ECF No. 516.)  Dr. Vance opined as follows:

> Mr. Arbogast produced electrical panel boards from ***asbestos containing Bakelite and Micarta panel board***.  The drilling and sawing required in performing this work produced dust to which he was exposed.  The use of "blow down" as a cleaning practice when this work was performed exacerbated Mr. Arbogast's exposures.  He described this work[23]:
>
> > Q And what, if any, dust was created when you fabricated the industrial Micarta product at the Curtis Bay yard?
> >
> > A Yes, sir, there was dust created when I -- I cut the Micarta and the Bakelite.  It was dust when I -- when I had to drill it.  It was dust in the area when I was doing this, and also I had to clean up the benches, and we even had to sweep in the shop too.
> >
> > Q And -- and did you breathe that dust?
> >
> > A Yes, sir.  We had to blow -- blow it out sometimes with some air just to clean up the residue that was there.
>
> He testified[24] the Bakelite and Micarta products did not have warning labels on them.

(Vance Op. 10 (emphasis added).)  According to Dr. Vance's citations in endnotes 23 and 24, his opinion relies upon Arbogast's deposition testimony on April 8, 2015, pages 205-06 and 212-13.  The Court has reviewed the cited pages, but finds no evidence therein to support Dr. Vance's statement that "Mr. Arbogast produced electrical panel boards from ***asbestos containing Bakelite and Micarta panel board***."  Arbogast's testimony in the April 7, 2015, deposition is inconclusive, at best, on the alleged asbestos content of Micarta:

> Q      And I think you said that you didn't know it at the time, but now you have information that you believe some Micarta contained asbestos:  is that correct?

      A      Yes.

      Q      And how did you come to that information?

      A      Just talking in the shop, you know, later on when we found out that it had the fibers and stuff. And that's—from talk in the shop, yes.

      Q      And do you remember who in the shop told you that?

      A      No, ma'am, I don't.

(Arbogast Dep. Apr. 7, 2015, 599:17—600:9, Pls.' Opp'n Ex. 3, ECF No. 415-4.)

The uncertain nature of Arbogast's belief was evident when Westinghouse's counsel questioned him about the specific grade of Micarta that Westinghouse recommended for the particular use about which Arbogast testified. He agreed that he was using it to fabricate arc chutes, corresponding to a recommended use for Micarta grade 259-2, which, according to Westinghouse's documents, was composed of fiberglass cloth and a resin called Melamine. (*Id.* 601:8—602:17; *see also* "Westinghouse Micarta Industrial Products," pp. 11-12, Pls.' Opp'n Ex. 10, ECF No. 415-11.)

Thus, not only does the evidence not support Dr. Vance's conclusion that Arbogast was working with asbestos-containing Micarta, but it also flatly contradicts that conclusion. Plaintiffs have provided nothing to refute this evidence. Moreover, Dr. Vance acknowledged that some grades of Micarta contained asbestos and some did not, and that he himself could not recognize whether a material was Micarta or some other product; further, he indicated he used the term "Micarta" as a generic term of art, not referring to a specific manufacturer's product. (Vance Dep. 139:3-25; 146:13—147:10; 150:2—151:6, Sept. 25, 2015, Def. Westinghouse's Mot. Lim. Ex. B, ECF No. 393-4.) In addition, he could not opine to a reasonable degree of scientific certainty that Arbogast ever encountered a grade of Micarta that contained asbestos.

(*Id.* 147:2-10.) Consequently, the Court concludes his opinion rests only upon an unwarranted assumption rather than "sufficient facts or data," as required by the Federal Rules of Evidence, Rule 702(b). Accordingly, Dr. Vance's opinion that Arbogast was exposed to asbestos by working with Micarta is excluded from the case.

### B. *Motion for Summary Judgment*

#### 1. *Standard for Summary Judgment*

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (citing predecessor to current Rule 56(a)). The burden is on the moving party to demonstrate the absence of any genuine dispute of material fact. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). If sufficient evidence exists for a reasonable jury to render a verdict in favor of the party opposing the motion, then a genuine dispute of material fact is presented and summary judgment should be denied. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). However, the "mere existence of a scintilla of evidence in support of the [opposing party's] position" is insufficient to defeat a motion for summary judgment. *Id.* at 252. The facts themselves, and the inferences to be drawn from the underlying facts, must be viewed in the light most favorable to the opposing party, *Scott v. Harris*, 550 U.S. 372, 378 (2007); *Iko v. Shreve*, 535 F.3d 225, 230 (4th Cir. 2008), who may not rest upon the mere allegations or denials of his pleading but instead must, by affidavit or other evidentiary showing, set out specific facts showing a genuine dispute for trial, Fed. R. Civ. P. 56(c)(1). Supporting and opposing affidavits are to be made on personal knowledge, contain such facts as would be admissible in evidence, and show affirmatively the competence of the affiant to testify to the matters stated in the affidavit. Fed. R. Civ. P. 56(c)(4).

*2. Analysis*

As the Supreme Court has stated,

> the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.  In such a situation, there can be "no genuine issue as to any material fact," since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial.  The moving party is "entitled to a judgment as a matter of law" because the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof.

*Catrett*, 477 U.S. at 322-23.

In applying this principle, the Court turns to the essential elements of Plaintiffs' claim.  In Maryland, liability in an asbestos exposure case is established if the actor's conduct was a substantial factor in bringing about the claimed harm to the Plaintiffs.  Here, Plaintiffs contend Arbogast was harmed by exposure to asbestos emanating from Westinghouse's product called Micarta.  It is, therefore, essential that Plaintiffs produce evidence that the specific product, which Arbogast says he encountered, contained asbestos.  *See Rotondo v. Keene Corp.*, 956 F.2d 436, 439 (3d Cir. 1992) ("a plaintiff must present evidence 'to show that he inhaled asbestos fibers shed by the specific manufacturer's product'"), *quoted in Eagle-Picher v. Balbos*, 604 A.2d 445, 461 (Md. 1992).  *See also Reiter v. Pneumo Abex, LLC*, 8 A.3d 725, 732 (Md. 2010) (plaintiffs must present evidence of exposure to specific product made or manufactured by defendant "on a regular basis, over some extended period of time, in proximity to where the [plaintiff] actually worked" (quoting *Lohrmann v. Pittsburgh Corning Corp.*, 782 F.2d 1156, 1162-63 (4th Cir. 1986) (emphasis omitted))); *Georgia-Pacific Corp. v. Pransky*, 800 A.2d 722, 724-25 (Md. 2002) ("the plaintiff must have been in or very near the presence of the ***asbestos-containing product*** and able to inhale fibers released from ***that product***" (emphasis added)).

An essential element of Plaintiffs' case is the asbestos content of the Micarta product or products with which Arbogast says he worked. But based upon the Court's review of the materials submitted by the parties, it becomes clear that a fatal flaw in Plaintiffs' case is their inability to provide any evidence that the *specific* Micarta product encountered by Arbogast in his work actually contained asbestos, and the Court cannot merely assume it did.

The Court notes the uncontradicted evidence produced by Westinghouse that, over the course of the twentieth century, Westinghouse produced Micarta in numerous grades, only a few of which contained asbestos. (Def. Westinghouse's Reply, Ex. B, Ans. Interrog. at 25 in *In re. Complex Asbestos Litig.*, Cal. Sup. Ct. San Francisco City & Cty. No. 828684.) The different grades had varying compositions. All of the grades apparently had some sort of fibrous element. According to Westinghouse's documentation, the fibrous element could be supplied by paper, cloth, asbestos, or fiberglass. (Def. Westinghouse's Mot. Summ. J., Ex. I, "Grade Selection Guide.") Because only a handful of Micarta grades ever contained asbestos—meaning the majority of grades did not—it is necessary for Plaintiffs to have evidence that Arbogast encountered one of the asbestos-containing grades of Micarta. Simply labeling something as "Micarta" is insufficient. Although the evidence is not conclusive, the Court will assume that Arbogast worked with and around a grade, or perhaps more than one grade, of Micarta. But the Court cannot assume Arbogast worked in proximity to an asbestos-containing grade of Micarta.

One of the bits of evidence upon which Plaintiffs rely is that he worked with "industrial Micarta." (Pls.' Opp'n 6.") However, they produce no evidence that attaches any significance to "industrial Micarta" in terms of whether or not it contained asbestos. They also point to his April 8, 2015, deposition testimony when he was asked to describe the material he used to fabricate a backing board for an electrical panel box: "That one, as I recall, would be, like, a

7

piece of half-inch Micarta if we used that on that -- what I was -- whatever I was told to use, that's what we used. And it was a brownish color. It looked like it had some fibers on it." (Pls.' Opp'n Ex. 1, ECF No. 502-1, 148:19—149:2.)  Thus, Plaintiffs rely upon Arbogast's bare, unsubstantiated belief that the fibers he was seeing in what he called Micarta were, in fact, asbestos fibers. (*See also id.* Ex. 3, Arbogast Dep. Apr. 1, 2015, 87:3-4, ECF No. 502-3.) As far as the Court is aware, Plaintiffs have produced no evidence of Arbogast's ability to identify fibers in any product as asbestos or nonasbestos. Whether a product had "visible fibers" (Pls.' Opp'n 15) means nothing since every grade of Micarta had some sort of fiber in it. Neither Arbogast nor a former coworker who was deposed ever performed any test on any Micarta product they claimed to have used to determine whether its composition included asbestos. (Def. Westinghouse's Reply, Ex. C, Burnham Dep. July 15, 2015, 149:16—150:1; Ex. D, Arbogast Dep. Apr. 15, 2015, 388:15-20.) These two individuals also testified that some fellow union members told them that Micarta may have contained asbestos. (Burnham Dep. 146:--149:15; Arbogast Dep. Apr. 15, 2015, 389:1-9.) But that hearsay certainly cannot be considered proof of any asbestos content of the particular grade or grades of Micarta that Arbogast may have encountered in his employment.

Because of the failure of proof on an essential element of Plaintiffs' case, Westinghouse is entitled to summary judgment as a matter of law on all of Plaintiffs' claims against the company.

### III. *Conclusion*

The Court concludes that both pending motions by Westinghouse are meritorious. Dr. Vance's opinion as to whether Arbogast was exposed to asbestos emanating from Westinghouse's product Micarta is excluded for lack of factual foundation. Further, no genuine

dispute of material fact exists as to whether the specific grade or grades of Micarta encountered by Arbogast in his employment contained asbestos. Thus, summary judgment shall enter for Westinghouse and against Plaintiffs. A separate order follows.

DATED this 6th day of June, 2016.

                                                  BY THE COURT:

                                                  _____/s/_____
                                                  James K. Bredar
                                                  United States District Judge